UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HENK MEYERS,<br>Plaintiff,<br><br>v.<br><br>SNOHOMISH COUNTY PUBLIC TRANSPORTATION BENEFIT AREA, doing business as Community Transit, et al.,<br>Defendants. | CASE NO. 2:25-cv-02463-TL<br><br>ORDER DENYING MOTION FOR TRO AND DISMISSING AMENDED COMPLAINT |

This matter is before the Court on Plaintiff Henk Andrew Meyers's Motion for Temporary Restraining Order and Preliminary Injunction ("Motion for TRO") (Dkt. No. 48), and on the recommendation of the Honorable S. Kate Vaughan, United States Magistrate Judge, that the complaint be reviewed under 28 U.S.C. § 1915(e)(2)(B) (*see* Dkt. No. 3 (Order Granting Leave to Proceed *In Forma Pauperis*) at 1). Having considered the Motion for TRO and the

//

//

relevant record, the Court DENIES the motion and DISMISSES the Amended Compliant pursuant to 28 U.S.C § 1915(e)(2)(B), without leave to amend.[1]

## I. PROCEDURAL BACKGROUND

Plaintiff brings this action pro se and *in forma pauperis* ("IFP"). Plaintiff filed his original proposed complaint (Dkt. No. 1-1) as an attachment to Application to Proceed IFP (Dkt. No. 1). When Plaintiff was granted leave to proceed IFP (*see* Dkt. No. 3), his proposed complaint was posted to the docket as the then-operative complaint. Dkt. No. 4. In granting Plaintiff leave to proceed IFP, Judge Vaughan recommended the undersigned review the complaint under 28 U.S.C. § 1915(e)(2)(B) before issuance of any summons. Review has not been completed until now, and no summons has been issued.

Despite the lack of a summons, Plaintiff appears to have attempted service of the original complaint on some or all Defendants. Counsel on behalf of most (but not all) Defendants appeared on January 2, 2026 (*see* Dkt. No. 6) and filed an answer on January 15, 2016 (Dkt. No. 9). Plaintiff filed his First Amended Complaint ("FAC") on February 24, 2026. Dkt. No. 16. Considering that proper service still has not and cannot be executed, *see* Fed. R. Civ. P. 4(a)(1)(F)–(G), (c)(1), the Court finds that the FAC was properly filed under Federal Rule of Civil Procedure 15(a)(1)(A) and is the operative complaint.

## II. FACTUAL BACKGROUND

The following facts are drawn from the FAC. Dkt. No. 16. All reasonable inferences are made in Plaintiff's favor.

The FAC names 13 defendants and asserts claims via 42 U.S.C. § 1983 for First

[1] The Court did not consider Plaintiff's untimely response. *See infra* Section V.A & n.10. The Court also did not consider Plaintiff's reply (Dkt. No. 53) because the Local Rules of this District are clear that "no reply will be permitted" in support of a TRO. LCR 65(b)(5).

Amendment Retaliation (Count I), Fabrication of Evidence (Count II), Municipal Liability (Count III), and Conspiracy (Count IV), as well as state-law claims for violation of the Washington Public Records Act (Count V), Abuse of Process (Count VI), Defamation Per Se (Count VII), and Intentional Infliction of Emotional Distress (Count VIII).[2] Defendants are the Snohomish County Public Transportation Benefit Area ("Community Transit"), Deanna "De" Tapia, Phillip "Phil" Gabriel Tapia, Ric Ilgenfritz, Michael Berman, Rachel Woods, Kyle Hughes, Chas Stearns, Matthew Hendricks, Kunjan Dayal, Veralee "Vera" Estes, Samantha Lushtak, and Brian Vallene. Defendant De Tapia is Plaintiff's mother, and Defendant Phil Tapia is Plaintiff's stepfather. All individual Defendants other than Phil Tapia are current or former Community Transit employees and agents named in their individual capacities. Plaintiff names various Defendants or combinations of Defendants in his various claims.

On June 3, 2025, Plaintiff Henk Andrew Meyers sent two emails to the Human Resources ("HR") department of Community Transit, a public transit authority based in and around Snohomish County (*id.* ¶ 9), to report what he describes as a "procurement scheme" orchestrated by his mother, Defendant Community Transit employee Deanna "De" Lyn Tapia and her husband Defendant Phillip "Phil" Gabriel Tapia. Dkt. No. 16 ¶¶ 2, 26. Plaintiff had sent Defendant De Tapia a draft of at least one of these emails, which she forwarded to Phil Tapia on May 30, 2026. *Id.* ¶ 27. Community Transit, De Tapia, and Phil Tapia are all Defendants in this case. Defendant De Tapia has served as Defendant Community Transit's Director of Information Technology since 2014 and "supervised the procurement channels through which" over $1.6

[2] The Court notes that the FAC does not indicate whether Plaintiff's common-law claims (Counts VI through VIII) arise under Washington law or the law of another jurisdiction. The Court could (but does not) dismiss these claims on that basis alone, as Ninth Circuit courts have held that "failure to allege which state law governs a common law claim is grounds for dismissal." *Romero v. Flowers Bakeries, LLC*, No. C14-5189, 2016 WL 469370, at *12 (N.D. Cal. Feb. 8, 2016). Instead, the Court assumes these claims arise under Washington law and proceeds accordingly.

million in payments have been made to companies owned by Defendant Phil Tapia. *Id.* ¶ 1. Defendant Community Transit appears to have been aware of the potential for a conflict of interest arising from this relationship, and "[i]ts HR department warned [Defendant De Tapia] in writing about the conflict in 2017." *Id.* ¶ 1. The same day Plaintiff emailed Community Transit HR, he "submitted public records requests for underlying contracts." *Id.* ¶ 2.

On June 4, 2025, the day after Plaintiff contacted his mother's employer, Defendant De Tapia filed a petition for a Domestic Violence Protection Order ("protection order") in Washington state court. *Id.* ¶ 30. The petition asked the Court to "restrict abusive litigation" by Plaintiff and "protect us from harassment, defamation, threats, blackmail, and extorsion [*sic*] by any means including all electronic communication and social media[.]" *Id.* (quoting petition). That same day, Defendant De Tapia used her work email to "distribute photographs of Plaintiff, his domestic partner, and their dogs to [Community Transit] employees, thanking them 'for their help.'" *Id.* ¶ 35.

Also on June 4, 2025, Defendants De and Phil Tapia filed a complaint with the FBI's Internet Crime Complaint Center ("IC3")[3] relating to what they characterized as "wire fraud," "cyber crimes," "probing financial accounts," and "extortion and blackmail." *Id.* ¶ 31. Plaintiff disputes these characterizations and describes the behavior at issue as "lawful public records research." *Id.*

On June 4 and 5, 2025, Community Transit employees exchanged emails related to the petition for Domestic Violence Protection Order and concerns that Plaintiff may "fly out [from

[3] The FAC refers to an "IC3 complaint." *See, e.g.*, Dkt. No. 16 ¶ 11. The Acronym "IC3" stands for the Internet Crime Complaint Center, a central hub for reporting cyber-enabled crime run by the Federal Bureau of Investigation. The IC3 allows any person to "[f]ile a report to share information with the FBI" using a form accessible from the homepage of the website. *See* Homepage, Internet Crime Complaint Center (IC3), https://www.ic3.gov (last accessed Aug. 4, 2026).

his home in Las Vegas, Nevada] or call into a board meeting to say defamatory things." *Id.* ¶ 32. But Plaintiff asserts that he "had expressed no intent to attend or call into any board meeting." *Id.* On June 5, 2025, Defendant Kyle Hughes, Community Transit's Community Transit's Security Manager, emailed the Snohomish County Sheriff's Office and relayed these concerns. *Id.* ¶¶ 16, 33. Defendant Hughes emailed Defendant Veralee Estes, Community Transit's Senior Manager of Employee Engagement (*id.* ¶ 20): "I think it would be reasonable to deny any public comment from this individual per the court order despite it being unserved. I'll discuss with Scott as we may need to run it through legal and then coordinate with IT and Rachel for the board meeting." *Id.* ¶ 33. Plaintiff does not allege that he attempted to attend the board meeting or that any law enforcement action was taken to enforce the protection order or restrict Plaintiff's actions or speech. It appears from the FAC (which cites, but does not attach, multiple "exhibits" purportedly evidencing emails among Community Transit staff and between Defendant Hughes and the Snohomish County Sheriff's Office[4]) that Plaintiff learned of these conversations through a public records request.

Meanwhile, Plaintiff's June 3, 2025, records request was being processed. On June 6, 2025, Defendant Michael Berman, Community Transit's IT Manager, messaged Defendant Rachel Woods, Community Transit's Public Records Officer, "Please do not act on this request at this time. . . . A court order is in the works." *Id.* ¶ 34 (omission in original). On June 13, 2025, after Defendant Woods advised Community Transit's outside counsel, Defendant Hendricks, that the majority of responsive records did not fall within a statutory exemption under RCW 42.56.675, Defendant Hendricks directed unidentified "personnel" to review the responsive records for other statutory exemptions. *Id.* ¶ 38. At some point, Community Transit

[4] Since the Court assumes the truth of the factual allegations for its analysis for the purposes of this Order, *see infra* Section III.B, the Court does not need to review the missing exhibits.

made a release of records in response to Plaintiff's request. *See id.* The FAC does not indicate whether any exemptions from disclosure were claimed. *See id.* However, Plaintiff alleges that "Microsoft Teams Communications between [Defendant Berman] and [Defendant] De Tapia," which Defendant Berman "had identified . . . as responsive," did not appear in that production. *Id.*

On June 18, 2025, a hearing was held in state court, and a Domestic Violence Protection Order was granted against Plaintiff. *Id.* ¶ 36. The evidence presented by Defendants De and Phil Tapia appears to have included declarations by several Community Transit employees who are not named as Defendants in this action. *Id.* ¶ 30. Defendants De and Phil Tapia also presented a "forensic report" prepared by Defendant Berman, in his capacity as Community Transit's IT Manager, which discussed Plaintiff's emails to Community Transit HR. *Id.* ¶ 37. Plaintiff alleges that this report was "fabricated" because it omits the final sentence of one of Plaintiff's emails, "Thank you for keeping this confidential," and because it "characterized lawful service of Plaintiff's legal response as 'cyber-harassment.'" *Id.*

Plaintiff timely filed a Motion for Revision of the Domestic Violence Protection Order. *Id.* ¶ 39. Plaintiff alleged a number of "procedural irregularities" in Snohomish County Superior Court, but the motion was ultimately denied "without addressing" them on August 22, 2025. *Id.* ¶ 40. Plaintiff appears to have appealed that denial, but "voluntarily dismissed his appeal to pursue this federal action" on November 25, 2025. *Id.* ¶ 41.

## III. Legal Standards

### A. Temporary Restraining Order

Federal Rule of Civil Procedure 65 governs the issuance of preliminary injunctive relief. "An injunction is an exercise of a court's equitable authority," which should not be invoked as a matter of course, but "only after taking into account all of the circumstances that bear on the

need for prospective relief." *Salazar v. Buono*, 559 U.S. 700, 714 (2010). "A TRO, as with any preliminary injunctive relief, is an extraordinary remedy that is 'never awarded as of right.'" *Kovalenko v. Epik Holdings Inc.*, No. C22-1578, 2022 WL 16737471, at *2 (W.D. Wash. Nov. 7, 2022) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). The standards that govern TROs are "substantially similar" to those that govern preliminary injunctions. *Holthouse v. Wash. Dep't of Corr.*, No. C25-5257, 2025 WL 1167659, at *1 (W.D. Wash. Apr. 22, 2025) (citing *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017)).

To obtain a preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of the equities tips in the moving party's favor; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20. These elements—referred to as the *Winter* factors—can be balanced on a sliding scale, allowing preliminary relief to issue where there are "serious questions going to the merits" and the balance of hardships "tips sharply towards the plaintiff," "so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132–35 (9th Cir. 2011) (concluding that district courts may use a sliding-scale approach but requiring that all four *Winter* factors be met).

**B. Dismissal of Claims under 28 U.S.C. § 1915.**

The Court's authority to grant IFP status derives from 28 U.S.C. § 1915. Per the statute, the Court must dismiss a case if an IFP Plaintiff fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *see also Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc) ("[S]ection 1915(e) applies to all in forma pauperis complaints, not just those filed by prisoners."). "The legal standard for dismissing a complaint for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as when ruling on dismissal under Federal

Rule of Civil Procedure 12(b)(6)." *Day v. Florida*, 2014 WL 1412302, at *4 (W.D. Wash. Apr. 10, 2014) (citing *Lopez*, 203 F.3d at 1129). Rule 12(b)(6) requires courts to assume the truth of factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).

A well-pleaded complaint must provide sufficient factual details to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Where a plaintiff proceeds pro se (without an attorney), courts must construe the complaint liberally. *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1011 (9th Cir. 2011) (citing *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)). However, a court "should 'not supply essential elements of the [pro se] claim that were not initially pled.'" *Henderson v. Anderson*, No. C19-789, 2019 WL 3996859, at *1 (W.D. Wash. Aug. 23, 2019) (quoting *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997)); *see also Khalid v. Microsoft Corp.*, 409 F. Supp. 3d 1023, 1031 (W.D. Wash. 2019) ("[C]ourts should not have to serve as advocates for pro se litigants." (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987))).

## IV. Preliminary Matter

Before delving into the merits of the matters before it, the Court wishes to address the delay in this case occasioned by the Court's ongoing review of the complaint under 28 U.S.C. § 1915(e)(2)(B), as well as the unusual procedural situation presented by a case in which most Defendants have appeared despite the present legal impossibility of their having been served. *See* Dkt. No. 13 (Minute Order striking case management orders entered in error and finding good cause to delay the entry of a case schedule until Section 1915 review is complete). In particular, the Court acknowledges Plaintiff's frustration with the delay. *See generally* Dkt. Nos. 30 ("Motion for Order Setting Date Certain of Completion of 28 U.S.C. § 1915(e)(2)(B) Review"), 40 ("Motion to Lift Stay"). Plaintiff suggested in his Motion for Date Certain that the Court set

aside its obligation under Section 1915(e)(2)(B), arguing that "[w]hen defendants have already voluntarily appeared, retained counsel, and answered on the merits, the screening mechanism has been overtaken by the adversarial process itself." Dkt. No. 30 at 6. But the Court cannot do so.

First, Plaintiff's suggestion is simply inapplicable where, as here, some but not all defendants have appeared.[5] Second, any complaint filed by a person proceeding IFP pursuant to 28 U.S.C. § 1915(a) is subject to a mandatory and sua sponte review and dismissal by the Court to the extent it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). In fact, the statute "not only permits but requires" the court to sua sponte dismiss an IFP complaint that fails to state a claim. *Lopez*, 203 F.3d at 1126–27. This obligation of a court shall be carried out "at any time." 28 U.S.C. § 1915(e)(2). Finally, under binding Ninth Circuit precedent, "the provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners." *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001). While the Court shares Plaintiff's concern that this particular delay is not one he would have faced as a paying filer, Section 1915(e)(2)(B) serves an important role and should not unduly burden meritorious litigation.[6]

For the reasons explained below, *see infra* Section V.B, this action is not meritorious. This conclusion is one the Court reached upon careful review of the original complaint, but before the Court was able to take the time and care necessary to explain the reasons for this determination in a written order. Plaintiff filed the FAC on February 24, 2026. *See* Dkt. No. 16.

---

[5] Counsel has appeared on behalf of all Defendants other than Phil Tapia and Brian Vallene. *See* Dkt. Nos. 19, 35, 36.

[6] Further, the Court notes that Plaintiff's assumption that had he paid the filing fee upfront, "this case would have a scheduling order, discovery deadlines, and a trial date" (Dkt. No. 30 at 5) is not necessarily correct. *See* Fed. R. Civ. P. 16(b)(2) (allowing Court to delay the entry of a scheduling order upon a finding of good cause). The Court regularly delays entry of a scheduling orders where a complaint appears unlikely to survive a pending motion to dismiss.

Because "an amended pleading supersedes the original," *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990), the amendment meant restarting the process of Section 1915 review. When Plaintiff filed his Motion for Date Certain (Dkt. No. 30) on April 7, 2026, the operative complaint in this case had been pending for 42 days, since the original complaint in this case had been replaced by the FAC. Although the Court aspires to address all matters as promptly as possible, and certainly before five months have passed, this is often not practical or even possible. The complexity of a matter, and the volume and urgency of other matters before the Court, often result in delays.

Plaintiff previously identified seven cases in which courts in this District conducted Section 1915 review more quickly—in anywhere between 4 and 29 days. *See* Dkt. No. 31-1 (Meyers Decl. Exhibit "IFP Screening Benchmark") at 1. But none of the complaints in those cases (which represent a tiny fraction of those reviewed under Section 1915 during this time) are comparable to Plaintiff's. Four of the seven use the court's standard form for pro se civil rights complaints, and include, *at most*, a few sentences of information handwritten by the plaintiff.[7] The other three complaints were fully drafted in original prose but still easily dismissed in short orders, either because they asserted no claims against the defendants (*Flanagh v. Greater Lakes Mental Healthcare*, No. C25-6106, 2025 WL 3721714, at *2 (W.D. Wash. Dec. 23, 2025)) or because they asserted only claims that fell beyond the court's jurisdiction under the *Rooker–Feldman* doctrine. (*Harvill v. Harvill*, No. C25-5537, 2025 WL 1884172, at *2 (W.D. Wash. July 8, 2025); *Brown v. City of Marysville*, No. C25-2218, 2025 WL 3563253, at *1 (W.D. Wash. Dec. 12, 2025)). These complaints were dismissed in short orders, as they required

[7] These complaints are *Perrigoue v. Ivey*, No. C25-1700, Dkt. No. 5 (W.D. Wash. Sept. 9, 2025), *Crary v. Washington*, No. C25-6082, Dkt. No. 9 (W.D. Wash. Dec. 19, 2025), *Briggs v. Wash. State Dep't of Social and Health Servs.*, No. C25-5274, Dkt. No. 5 (W.D. Wash. Apr. 21, 2025), and *Bjurling v. Johnson*, No. C25-5559, Dkt. No. 4 (W.D. Wash. June 27, 2025). *See* Dkt. No. 31-1 at 1.

relatively little research or effort to prepare. Moreover, all but two of these Section 1915 reviews were completed before December 2025, a critical turning point after which the Western District of Washington has been inundated with habeas corpus petitions filed by individuals in immigration detention.[8]

In contrast, Plaintiff has filed a detailed complaint at a busy time, naming 13 defendants and asserting eight claims. *See generally* Dkt. No. 16. Dismissing the FAC on Section 1915 review would require an extensive, detailed order, discussing whether Defendant had successfully pleaded each federal claim as to each defendant.[9] Unfortunately, while the Court immediately dedicated significant time to considering the FAC (and earlier, his original complaint, which included more defendants and more claims), time has not permitted the completion of such an Order until now.

## V. Discussion

### A. Motion for Temporary Restraining Order

Plaintiff seeks a temporary restraining order arising from four communications from Community Transit, each of which assessed fees for fulfillment of public records requests made by Plaintiff. Dkt. No. 48 at 1–2. Plaintiff asks the Court to enjoin Community Transit for closing his open requests for nonpayment, "delet[ing], overwrit[ing], or allow[ing] to expire" two specific categories of records, and "demand[ing] that Plaintiff destroy produced records," and to

---

[8] Between January and July 2026, the Western District of Washington received more than 1,000 of these petitions, compared to 45 in the same period in 2025. A petition for writ of habeas corpus is uniquely urgent, as it is "entitled by statute to special, preferential consideration to insure expeditious hearing and determination." *Van Buskirk v. Wilkinson*, 216 F.2d 735, 737–38 (9th Cir. 1954). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from [her] within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (quoting *Ruby v. United States*, 341 F.2d 585, 587 (9th Cir. 1965)). In the same period, civil case filings have increased by 15 percent.

[9] Plaintiff's comparison to *Farler v. Snohomish County et al.*, No. C25-1853, is more apt—the length and complexity of the complaint in that case stalled Section 1915 review significantly.

require Community Transit to "make the records already located and identified in those requests available" to Plaintiff within fourteen days (presumably without any payment of fees).[10] *Id.* at 8.

Discussing the first *Winter* factor, Plaintiff asserts that he is likely to succeed on his first claim, for Retaliation in Violation of the First Amendment. As the Court discusses in greater detail below, Plaintiff has not actually stated a claim for relief on this claim, and so he is not likely to (and cannot) succeed on it. *See infra* Section V.B.1.b. Even if success on this claim were likely, however, it would not support the interim relief Plaintiff seeks, because his First Amendment Retaliation claim is unrelated to the communications at issue in the Motion for TRO—that is, communications made on June 25, 2026, July 21, 2026, July 23, 2026, and July 28, 2026 (Dkt. No. 48 at 1–2)—or the records requests underlying these communications. *See* Dkt. No. 16 ¶¶ 42–43. While a separate claim in the FAC relates to production of records (*see id.* ¶ 50), and while Plaintiff's prayer for relief accordingly seeks "production of all withheld records . . ." (*id.* at 13), the likelihood of success on the merits of this claim is not discussed in the Motion for TRO at all (*see generally* Dkt. No. 48). Moreover, the FAC discusses only a single record request: one Plaintiff made on June 3, 2025. Dkt. No. 16 ¶ 2. Plaintiff now indicates that, over the following 13 months, he made an additional 26 or more public record requests to Defendant Community Transit. Dkt. No. 48 at 1. The communications at issue in the motion for TRO all appear to relate to these later requests. *See id.* at 1–2; Dkt. No. 49 (Meyers Decl.) ¶ 12 (indicating that request 25-168, evidently the oldest request at issue, was opened August 1,

[10] The Community Transit Defendants filed an untimely response in opposition to the Motion for TRO on August 3, 2026, four days after the motion was filed. Under LCR 65(b)(5), a party opposing a motion for TRO "must . . . file its response, if any, within forty-eight hours after the motion is served." Counsel for the Community Transit Defendants is a mandatory e-filer and receives service through the e-filing portal as soon as a document is filed. This means that any response was due *at the latest* by 11:18 a.m. on Saturday, August 1, 2026, 48 hours after the motion was filed. By the time the response was filed, at 11:02 a.m. on August 3, 2026, the Court had almost completely drafted its Order, and Defendants has long forfeited their opportunity to be heard.

2025). That is, the disputes and relief at issue in the Motion for TRO are not the same disputes and relief at issue in the FAC.

The Ninth Circuit has unequivocally held that there must be "a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself," *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015), and a movant "cannot seek interim equitable relief of a nature it is not seeking in the final adjudication of its lawsuit," *id.*at 638. This is because "[a] court's equitable power lies only over the merits of the case or controversy before it." *Id.* at 633; *see also De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945) (A preliminary injunction is appropriate only where it "grant[s] intermediate relief of the same character as that which may be granted finally," and does not "deal[] with a matter lying wholly outside the issues in the suit."); *Profil Institut Fur Stoffwechselforschung GmbH v. ProSciento, Inc.*, No. C16-1549, 2017 WL 1394089, at *1 (S.D. Cal. Feb. 28, 2017) ("Federal courts can issue preliminary injunctions only to the extent they pertain to pending underlying claims—in other words, where the preliminary injunction would temporarily grant the same kind of relief as the underlying claims, if successful, would ultimately merit." (citing *Pac. Radiation*, 810 F.3d at 636)).

"[A]bsent a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the complaint, 'the district court lacks authority to grant the relief requested.'" *Fischler Kapel Holdings, LLC v. Flavor Producers, LLC*, No. C19-10309, 2020 WL 6939887, at *4 (C.D. Cal. Nov. 25, 2020) (quoting *Pac. Radiation*, 810 F.3d at 636). The relief Plaintiff seeks in his Motion for TRO arises out of later-occurring conduct not alleged in the operative complaint. No resolution of the present claims will entitle Plaintiff to the injunctive relief he now seeks, and Plaintiff may not amend or supplement his pleading through a motion for preliminary injunctive relief. *See* Fed. R. Civ. P. 15 (setting forth proper avenues for

amending or supplementing a complaint). Therefore, the Court finds that it lacks authority to grant Defendant's request for intermediate relief.

**B. Dismissal of the Amended Complaint**

**1. Plaintiff's Federal Claims**

Plaintiff brings all of his federal-law claims under 42 U.S.C. § 1983, which creates a private right of action against state and local government officials who, under color of law, violate a person's constitutional or federal rights. *See* 42 U.S.C. § 1983. Rarely, individuals who are not government employees can still be considered state actors (and therefore liable under Section 1983), because their action is shaped by the state's "coercive power" or "significant encouragement," *Blum v. Yaretsky*, 457 U.S. 991, 1004, (1982), such that "seemingly private behavior 'may be fairly treated as that of the State itself,'" *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (quoting *Jackson v. Metro. Edison Co.,* 419 U.S. 345, 351 (1974), or because they have entered into a conspiracy with state officials to deprive others of constitutional rights, *see, e.g.*, *Tower v. Glover*, 467 U.S. 914, 920 (1984). Under certain conditions, municipal entities can also be liable under Section 1983 for constitutional and federal-law violations by their employees—a form of liability known as *Monell* liability. *See generally Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658 (1978).

The Court will first discuss issues specific to certain Defendants and will then consider whether Plaintiff has stated a claim for relief on each of his federal claims.

**a. Issues Related to Certain Defendants**

**(1) Defendants Not Named in Any Claim**

Plaintiff asserts no claims against Defendants Dayal, Ilgenfritz, or Vallene. *See generally* Dkt. No. 16. Plaintiff has therefore stated no claim for relief against these Defendants, nor can the Court discern from the FAC any allegations against these Defendants that form part of

Plaintiff's asserted claims.[11] *See generally id.* Defendants Dayal, Ilgenfritz, or Vallene, are therefore DISMISSED from this case.

**(2) Defendants Phil Tapia and De Tapia**

Plaintiff brings most of his claims against two of the individual Defendants: his mother, De Tapia (six claims), and her husband, Phil Tapia (seven claims). Based on the facts alleged in the Amended Complaint, however, neither of these individuals is liable under Section 1983 for the claims Plaintiff asserts.

Defendant Phil Tapia is a private citizen and, therefore, as a general matter, his actions are not taken under color of state law. *See Price v. Hawaii*, 939 F.2d 702, 707–08 (9th Cir. 1991). Although there are exceptions to this rule, Plaintiff has not shown that any of these exceptions applies. First, Phil Tapia is not acting under control or encouragement of the state. To the contrary, Plaintiff repeatedly describes Phil Tapia as "directing" Defendant De Tapia's actions, not the other way around. *See, e.g.*, Dkt. No. 16 ¶¶ 11, 28, 35, 49. Additionally, although Plaintiff alleges that Phil Tapia participates in a conspiracy with state officials (and, in fact, "acted as the hub" of the conspiracy (*id.* ¶ 49)), Plaintiff fails to state a claim for conspiracy, *see infra* Section V.B.1.d, and does not allege any interaction between Phil Tapia and any state officials other than Defendant De Tapia.

Unlike her husband, Defendant De Tapia is a municipal employee, and she can be found liable under Section 1983 for actions that deprive others of their constitutional rights if those actions are taken under color of state law. Generally, state and municipal employees are "acting

---

[11] The FAC mentions Defendants Dayal and Vallene in relationship only to the "procurement scheme" Plaintiff alleges he attempted to report to Community Transit HR, not to any violations of Plaintiff's rights. *See* Dkt. No. 16 ¶¶ 13, 19, 24. Defendant Ilgenfritz is briefly discussed both in relation to the "procurement scheme" (*id.* ¶¶ 12, 13, 24), and in a vague, repeated allegation that Defendant Chris Stearns "escalated" efforts to suppress Plaintiff's speech to Defendant Ilgenfritz, who is Community Transit's CEO (*id.*. ¶¶ 17, 47, 49). But Defendant Ilgenfritz is not alleged to have taken any action in response to this "escalation."

under color of state law" when they are acting in their official capacity. *See West v. Atkins*, 487 U.S. 42, 49–50 (1988). This requirement is met where the defendant has engaged in "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *United States v. Classic*, 313 U.S. 299, 326 (1941). However, "an officer who is pursuing his own goals . . . does not act under color of law, unless he purports or pretends to do so." *Huffman v. County of Los Angeles*, 147 F.3d 1054, 1058 (9th Cir. 1998) (citation modified). Here, with the exception of allegations related to the past "procurement scheme" (which did not plausibly violate Plaintiff's rights and which form no part of any claim he asserts), all De Tapia's alleged acts were undertaken in her private life, for private goals, detached from her official duties and without leveraging any of the authority of her position. These actions include jointly filing (with her husband) an IC3 complaint (*id.* ¶ 31) and filing a petition for a Domestic Violence Protection Order (*id.* ¶ 30), which she later supplemented with evidence obtained not from her workplace, but from her husband (*id.* ¶ 45). None of these actions were taken under color of state law. *See, e.g.*, *Rojsza v. City of Ferndale*, No. C12-1149, 2012 WL 5993513, at *2–3 (W.D. Wash. Nov. 29, 2012) (finding allegations that an off-duty police officer defendant reported suspected criminal activity to the police insufficient to establish that the defendant was acting under color of state law); *see also Brown v. Thalacker*, No. C11-6120, 2012 WL 775339, at *3–4 (D. Or. Mar. 6, 2012) (same where defendant was municipal employee). Indeed, it is hard to imagine what action could be more firmly situated in one's private life than seeking a protection order against a family member. Even Plaintiff's allegation that "De Tapia used her official Agency email to distribute photographs of Plaintiff, his domestic partner, and their dogs to Agency employees, thanking them 'for their help'" on the day she filed her protective order petition (*id.* ¶ 35), does not, without more, qualify as state action. De Tapia's official position did not uniquely empower her to take this action, which she

could just as easily have done (using her employer-issued email account) at a job in the private sector.

A comparison to *McDade v. West*, 223 F.3d 1135 (9th Cir. 2000), is illuminating. There, the Ninth Circuit found that a state employee acted under color of law when she illegally used the district attorney's password-protected database to locate her husband's ex-wife in order to serve child custody papers. *McDade*, 223 F.3d at 1139. Although the lower court had found that the employee was not acting under cover of state law because she acted within "the ambit of her personal pursuits," *id.* at 1139, the Court of Appeals reversed, because the action was an exercise of "power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law," *id.* at 1139–40 (citation modified) (quoting *West*, 487 U.S. at 48). Here, by contrast, Defendant De Tapia was using her work email to do the same thing she could have done with any work email provided by any employer—that is, to share information with her coworkers about a person against whom she was seeking a protection order. There is no allegation that in doing so she gained any advantage from her position or "abuse[d] the position given to h[er] by the State." *McDade*, 223 F.3d at 1140 (quoting *West*, 487 U.S. at 49–50).

For these reasons, Defendants De Tapia and Phil Tapia cannot be liable under 42 U.S.C. § 1983 for any of the actions alleged in the FAC, and Plaintiff has not plausibly pleaded any federal claim against these Defendants.

**b. First Amendment Retaliation**

There are three elements to a First Amendment retaliation claim. Plaintiff must establish that: (1) he was "engaged in a constitutionally protected activity"; (2) Defendants' "actions would chill a person of ordinary firmness from continuing to engage in the protected activity";

and (3) "the protected activity was a substantial or motivating factor in the [Defendants'] conduct." *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 827 (9th Cir. 2020).

Here, Plaintiff sufficiently alleges only the first element: that his records requests and emails to Community Transit were constitutionally protected speech on matters of public concern. Dkt. No. 16 ¶ 43. He cannot show that any action was taken against him that would "chill a person of ordinary firmness." *See Index Newspapers LLC*, 977 F.3d at 827. Plaintiff attempts to frame the following actions as "chilling": (a) Defendants De Tapia and Phil Tapia's filing for a protection order, (b) De Tapia and Phil Tapia's filing an allegedly false IC3 complaint, (c) Defendant Berman's "fabricat[ing] a forensic report," (d) Defendants' "halt[ing] records processing," and (e) Defendants' "coordinat[ing] law enforcement to arrest Plaintiff for anticipated speech." Dkt. No. 16 ¶ 43.The first two of these are actions taken by Plaintiff's mother and stepfather in their private capacity. As discussed in the prior section, *see supra* Section V.B.1.a.(2), acting in that capacity, they are neither restrained by the First Amendment nor subject to suit under Section 1983, and so no claim can be stated on the basis of these actions.

As to Plaintiff's third and fourth claimed violations, the Court can discern no reason why the alleged omission and mischaracterization in Defendant Berman's forensic report, nor the temporary pause in the processing of Plaintiff's record request, would have a chilling effect on speech, and Plaintiff does not explain how they could. As for Defendant Hughes's "coordination with the Sheriff's Office to arrest Plaintiff for anticipated board meeting speech," it is unclear how "a person of ordinary firmness" could have been chilled by an email exchange that they would ordinarily never have known about at all. Plaintiff characterizes these communications as a "threatened" "arrest."Dkt. No. 16 ¶ 43. But it is clear from the FAC that Plaintiff was never threatened with arrest or contacted by law enforcement in any way and could only have learned

about these emails (and, for that matter, about the pause in records processing) from his later records requests. In any case, the evidence presented by Plaintiff suggests that any potential arrest would have been for a violation of the protection order, not for Plaintiff's past emails or records request. *See id.* ¶ 33 ("The Sheriff's Office responded it would 'enforce the order and arrest' Plaintiff.") Taken altogether, Plaintiff's allegations as to the Defendants outside his own family do not show any of them taking any adverse action against him at all. Rather, they are alleged to have had conversations among themselves and with law enforcement about the lawful enforcement of a lawful protection order and the lawful processing of a public records request. None of these conversations is an action that could chill speech, and none arises directly from Plaintiff's emails to Community Transit HR.

**c. Fabrication of Evidence**

"To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017) (citations omitted). An official's deliberate fabrication of evidence violates a person's rights when it causes them to be criminally convicted or even charged with a crime. *See Caldwell v. City & County of San Francisco*, 889 F.3d 1105, 1115 (9th Cir. 2018). Deliberate fabrication or use of perjury also violates the rights of a parent or child when introduced in a civil dependency proceeding. *See Hardwick v. County of Orange*, 844 F.3d 1112, 1120 (9th Cir. 2017).

Here, Plaintiff does not plead facts sufficient to support a claim of deliberate fabrication because he does not, and cannot, show any deprivation of liberty caused by any alleged fabrication. Even assuming the Defendants named in this claim (Defendants Berman, De Tapia, and Phil Tapia), were all subject to Section 1983, Plaintiff suffered no deprivation of liberty as a result of any of their alleged "fabrications." Neither Defendant Berman's "forensic report" (Dkt.

No. 16 ¶ 13) nor the IC3 complaint submitted by Defendants De Tapia and Phil Tapia (*id* ¶¶ 31, 54) appear to have resulted in any deprivation of liberty or any other injury to Plaintiff whatsoever. And while Defendant De Tapia's state-court evidence packet (*id*. ¶¶ 30, 45) may have contributed to the state-court protection order issued against Plaintiff, Plaintiff does not actually allege that any of this evidence was fabricated, much less deliberately so—he alleges only that the evidence "was sourced from [Defendant] Phil Tapia" (*id.* ¶ 30), and that Defendant Berman's report omitted a sentence of Plaintiff's email (*id.* ¶ 37).

In any case, where, as here, the Domestic Violence Protective Order proceeding was fully resolved in favor of the petitioners (Defendants De Tapia and Phil Tapia), the Court gives full faith and credit to the state court's protection order and corresponding determination that the evidence presented was credible enough to enter the protective order, and the Court will not relitigate the credibility of that evidence. *See White v. City of Pasadena*, 671 F.3d 918, 926 (9th Cir. 2012) (Under the Full Faith and Credit Act, 28 U.S.C. § 1738, "a federal court 'must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'" (quoting *Migra v. Warren City Sch. Dist. Bd. of Ed.*, 465 U.S. 75, 81, (1984))). The state court proceeding was the appropriate place for Plaintiff to raise any challenge to the validity of the evidence presented therein, and preclusion applies even if he chose not to do so. *See Taie v. Ten Bridges LLC*, 568 F. Supp. 3d 1126, 1130 (W.D. Wash. 2021) (Under Washington law, claim preclusion bars relitigating "claims and issues that were litigated *or could have been litigated* in a prior action" in which a valid and final judgment has been rendered) (quoting *Eugster v. Wash. State Bar Ass'n*, 198 Wn. App. 758, 786, 397 P.3d 131 (2017)).

**d. Conspiracy**

A Section 1983 conspiracy requires an agreement to deprive the plaintiff of a constitutional right and an overt act in furtherance. *Mendocino Env'tal Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999). Plaintiff acknowledges this standard (Dkt. No. 16 ¶ 48) but does not allege that the elements here are met. Although he lists actions he characterizes as "overt acts," he does not allege that any Defendants ever entered into any agreement to violate his rights. Furthermore, the relationship of the "acts" to any particular rights is largely unclear, though Plaintiff alludes both to his rights under the First Amendment and his right to access municipal-government records. The latter of these is provided by state or local law, and its violation does not provide a basis for liability under Section 1983. As for Plaintiff's First Amendment rights, his allegation that these rights were violated fails for the reasons previously explained. *See supra* Section V.B.1.b. Because Plaintiff has failed to make the showing needed to demonstrate the violation of any constitutional right, his conspiracy claim fails. *See Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989) (noting that an alleged conspiracy under Section 1983 must result in an actual deprivation of a constitutional right).

**e. Municipal Liability**

The Amended Complaint also includes a municipal liability claim, alleging Community Transit itself is liable for the violations of Plaintiff's rights "because final policymakers directed and ratified the unconstitutional retaliation." Dkt. No. 16 ¶ 47. Municipal liability under Section 1983 is governed by *Monell*, 436 U.S. 658. To allege municipal liability under *Monell*, however, Plaintiff must adequately plead an underlying constitutional violation by a Community Transit employee. *See Scott v. Heinrich*, 39 F.3d 912, 916 (9th Cir. 1994) ("[M]unicipal defendants cannot be held liable because no constitutional violation occurred."); *Lockett v.*

*County of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020) ("*Monell* claims . . . require a plaintiff to show an underlying constitutional violation."). Because Plaintiff has not done so, he has not alleged (and cannot successfully allege) municipal liability under *Monell*.

* * *

For the foregoing reasons, all Plaintiff's federal claims must be DISMISSED.

**2. State-Law Claims**

Plaintiff's remaining claims arise, or appear to arise, under state law. Because the Court must dismiss all Plaintiff's federal claims—the only claims over which it might have original jurisdiction—it may decline to exercise supplemental jurisdiction over the pendant state-law claims. *See* 28 U.S.C. § 1367(c)(3). The Court declines supplemental jurisdiction over the state law claims and, therefore, these claims are DISMISSED.

**3. Leave to Amend Is Not Appropriate**

Courts typically allow pro se plaintiffs to amend their complaints in lieu of dismissal. *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012). However, that is not the case where "it is absolutely clear that the deficiencies . . . could not be cured by amendment." *Id.* (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1203–04 (9th Cir. 1988) (per curiam)).

Here, Plaintiff has already amended his complaint once. The Court finds that leave to further amend the federal constitutional claims against Defendants Phil Tapia and De Tapia would be futile. No matter what details Plaintiff adds to his complaint, Phil Tapia will remain a private individual who is not a state actor restrained by (and liable under) the U.S. Constitution. As to De Tapia, no matter what details Plaintiff adds, the actions that he complains of by De Tapia—filing a (meritorious) petition for Domestic Violence Protection Order against him, communicating with her employer about that petition and order, and filing a citizen complaint to IC3—were all undertaken in her private life, separate from her duties and authorities as a

government official. Leave to amend the federal constitutional claims against the remaining defendants would be futile, because Plaintiff has not shown, and cannot show, that he has suffered any constitutional injury as a result of their actions.

## VI. CONCLUSION

Accordingly, it is hereby ORDERED:

(1) Plaintiff's Motion for TRO (Dkt. No. 48) is DENIED.

(2) Plaintiff's Amended Complaint (Dkt. No. 16) is DISMISSED without prejudice but without leave to amend.

(3) All pending motions in this case (Dkt. Nos. 17, 18, 37, 40) are DENIED AS MOOT.

Dated this 14th day of August, 2026.

Tana Lin
United States District Judge